# EXHIBIT C

FILED
TARRANT COUNTY
6/1/2016 4:55:47 PM
THOMAS A. WILDER
DISTRICT CLERK

141-285772-16

CAUSE NO. _____

| | | |
|---|---|---|
| SANDRA KNIGHT AND GREGG STIEBER, INDIVIDUALLY, AND AS TRUSTEES OF THE FORT WORTH FOUNDATION TRUST, AND NORMAN KRONICK-TEXAS, INC., | §<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiffs, | §<br>§<br>§ | |
| V. | §<br>§ | _____ JUDICIAL DISTRICT |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, AND RICHARD C. LAMERE, | §<br>§<br>§<br>§ | |
| Defendants. | § | TARRANT COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION (WITH REQUESTS FOR DISCLOSURE)

TO THE HONORABLE COURT:

Plaintiffs Sandra Knight ("Knight") and Gregg Stieber ("Stieber"), Individually, and as Trustees of the Fort Worth Foundation Trust ("FWFT"), and Norman Kronick-Texas, Inc. ("NKTI"), collectively referred to hereinafter as "Plaintiffs," file this Original Petition (with Requests for Disclosure) bringing claims against Defendants Philadelphia Indemnity Insurance Company ("Philadelphia Insurance") and Richard C. Lamere ("Lamere") (collectively referred to hereinafter as "Defendants") as follows:

### I.    DISCOVERY CONTROL PLAN

1.    Plaintiffs intend that discovery in this case be conducted under a level 3 discovery control plan under Texas Rule of Civil Procedure 190.4.

## II.   CLAIM FOR RELIEF

2.     Plaintiffs affirmatively plead that this suit does not fall under the expedited-actions process in rule 169 of the Texas Rules of Civil Procedure because Plaintiffs seek monetary relief over $100,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees, and non-monetary relief.

## III.   PARTIES & SERVICE

3.     Plaintiff Sandra Knight is an individual residing in Tarrant County, Texas.

4.     Plaintiff Gregg Stieber is an individual residing in the State of Washington.

5.     Plaintiff Norman Kronick-Texas, Inc. is a Texas corporations with its principal place of business in Tarrant County, Texas.

6.     Defendant Philadelphia Insurance is a foreign insurance company engaging in the business of insurance in the State of Texas.  Philadelphia Insurance may be served with process by serving its registered agent, CT Corporation System at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136, its registered office.

7.     Defendant Richard C. Lamere is an individual residing in Tarrant County, Texas and may be served with process at his residence located at 745 Ridgewood Circle, Hurst, Texas 76054-2109.

## IV.   JURISDICTION & VENUE

### A.   JURISDICTION

8.     This Court has jurisdiction to adjudicate all claims Plaintiffs assert against Philadelphia Insurance, and the amount in controversy is within the jurisdictional limits of this Court.

9.     This Court has jurisdiction over Defendant Philadelphia Insurance because it engages in the business of insurance in the state of Texas and Plaintiffs' causes of action arise out of this Defendant's business activities in the State of Texas.

10.     This Court has personal jurisdiction over Defendant Lamere because he is a resident of the State of Texas, residing at 745 Ridgewood Circle, Hurst, Texas 76054-2109.

**B.     VENUE**

11.     Venue is proper in Tarrant County, Texas under section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Tarrant County, Texas. Knight is a resident of Tarrant County, Texas, FWFT has its principle location in Tarrant County, Texas, Lamere is a resident of Tarrant County, Texas, and the insurance agreement that is the subject of this lawsuit is performable in Tarrant County, Texas.

## V.     FACTUAL & PROCEDURAL BACKGROUND

**A.     CONTRACT OF INSURANCE**

12.     Philadelphia Insurance issued The Fort Worth Foundation Trust a Not-For-Profit Organization Directors & Officers Liability Insurance Policy No. PHSD881264 to FWFT for the **Policy Period**[1] of December 15, 2013 to December 15, 2014 (the "2013/2014 Policy"). The policy provisions most relevant to this litigation are summarized below.

- Philadelphia Insurance agreed to pay on behalf of Knight and Stieber, **Loss** from **Claims** made against Knight and Stieber during the **Policy Period**, and reported to Philadelphia Insurance pursuant to the terms of the 2013/2014 Policy, for **D&O Wrongful Acts**, except to the extent the **Organization** has indemnified Knight and Stieber for such **Loss**.

---

[1] Capitalized terms highlighted in boldface herein are defined terms in the Policy.

- Philadelphia Insurance agreed to pay on behalf of the **Organization**, **Loss** from **Claims** made against Knight and Stieber during the **Policy Period**, and reported to Philadelphia Insurance pursuant to the terms of the 2013/2014 Policy, for a **D&O Wrongful Acts**, if the **Organization** has indemnified Knight and Stieber for such **Loss**.

- Philadelphia Insurance will pay on behalf of the **Organization**, **Loss** from **Claims** made against the **Organization** during the Policy Period, and reported to Philadelphia Insurance pursuant to the terms of the 2013/2014 Policy, for a **D&O Wrongful Act**.

- **Organization** means FWFT and NKTI.

- **D&O Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty or **Personal & Advertising Injury** committed or attempted by Knight and/or Stieber as trustees of FWFT; or by the **Organization**.

- **Personal & Advertising Injury** means, in pertinent part, any actual or alleged oral or written publication that slanders or libels a person or entity or disparages a person's or entity's goods, products, or services.

- **Claim** includes any judicial proceeding which subjects an **Insured** to a binding adjudication of liability for monetary relief for a **D&O Wrongful Act**.

- **Insured** means the **Organization** and Knight and Stieber.

- **Interrelated Wrongful Act** means any causally connected **D&O Wrongful Act** or any series of the same, similar or related **D&O Wrongful Acts**.

- **Loss** means **Damages** and **Defense Costs**.

- **Defense Costs** means any reasonable and necessary legal fees and expenses incurred in the defense of a **Claim**.

- All **Loss** arising out of the same **D&O Wrongful Act** and all **Interrelated Wrongful Acts**, shall be deemed one **Loss** on account of one **Claim**. Such **Claim** shall be deemed to be first made or to have occurred when the earliest of such **Claims** were first made or occurred.

- In the event that a **Claim** is made against the **Insured**, the **Insured** shall, as a

condition precedent to the obligations of Philadelphia Insurance under the 2013/2014 Policy, give written notice of such **Claim** as soon as practicable to Philadelphia Insurance during this **Policy Period**, but, not later than February 13, 2015 (60 days after the expiration date of the 2013/2014 Policy).

## B.   BACKGROUND OF CLAIM

13.    Beginning in 1994, Ronald L. Bernell ("Bernell") and Norman M. Kronick ("Kronick") collaborated in a series of profitable real estate ventures in the commercial office warehouse business, four of which are limited partnerships:  6030 Brittmore, Ltd., 2950 South Shaver, Ltd., Braniff CB, Ltd., and 9801 Harwin, Ltd.  Upon their formation, each partnership admitted two general partners with identical partnership interests, one controlled by Bernell and the other by Kronick.   In two of the partnerships—6030 Brittmoore, Ltd. and 2950 South Shaver—affiliates of Bernell and Kronick each controlled half of the remaining ownership interests as limited partners.  In the remaining two limited partnerships—Braniff CB, Ltd. and 9801 Harwin, Ltd.—affiliates of Kronick owned a greater proportion of limited partnership interests than affiliates of Bernell. Additionally, Kronick and Bernell entered into management agreements to retain Bernell's Houston, Texas based property management company, Sunburst Interest, Inc. ("Sunburst"), to manage and oversee the subject commercial properties.

14.    The partnership agreements for the four limited partnerships contain substantially identical terms concerning the manner by which the limited partnerships would be governed and how the various affiliates would be compensated.  In sum, the agreements provided that all governance decisions concerning the partnerships required the cooperation and agreement of both Bernell and Kronick, acting through the two general

partners for each partnership. Similarly, any adjustment or termination of the management agreements with Sunburst required cooperation and mutual agreement, and the understanding that if the services of Sunburst were terminated "other than for 'Cause,' Bernell shall have the option to required that the Partnership purchase the Ownership Interest of the [respective Bernell affiliate'."

15.     On August 4, 2010, Kronick passed away, resulting in the transfer of control of NKTI (the Kronick affiliated general partner) to FWFT.

16.     Thereafter, a dispute arose between the parties and on January 30, 2013, an attorney acting on behalf of NKTI delivered letters to Sunburst terminating the respective management agreements "for cause."

17.     On February 13, 2013, the Bernell affiliated general partners RB Brittmoore, Inc., RB South Shaver, LLC, RB Braniff, Inc., RB Oakwood, Inc., Point Harwin, Ltd., (the "RB General Partners") and Sunburst, collectively the "RB Plaintiffs," filed a declaratory judgment action against NKTI seeking a declaration of rights among NKTI and the RB Plaintiffs under the respective limited partnership and management agreements. Specifically, the RB Plaintiffs sought a judgment declaring:

    a)    NKTI's purported termination of the limited partnership's management agreements with Sunburst was without authority and without the consent of the RB General Partners, and are therefore ineffective;

    b)    NKTI's purported retention of an unnamed management company was without authority and without the consent of the RB General Partners, and that NKTI must therefore terminate these contracts and account to the limited partnerships for any damages caused by any breach of any agreements with the unnamed management company;

c)     NKTI's purported retention of counsel for the limited partnerships was without authority and without the consent of the RB General Partners; that the counsel NKTI retained did not have the authority to represent the interests of the limited partnerships in any capacity or bind them in any respect; and, if necessary, that NKTI indemnify the limited partnerships for any fees charged to the limited partnerships by the counsel NKTI retained; and

d)     the just interests of the limited partnerships in sums recovered from Liberty Mutual Fire Insurance Company in settlement of claims for damage to commercial properties owned by certain of the limited partnerships caused by Hurricane Ike.

18.     In the interim, Sunburst continued to manage the properties.  There was a lot of dialog between the attorneys, NKTI contracted for appraisals of the properties, the RB General Partners and NKTI went to mediation, and NKTI made offers to purchase the RB General Partners' interests in the certain limited partnerships at the full appraised value on specific terms, or, alternatively, to sell the RB General Partners its interests in the certain limited partnerships at the full appraised value on specific terms.  However, when the RB General Partners and NKTI were not able to agree upon terms, NKTI filed a petition for injunctive relief, appointment of a receiver, and winding down of the limited partnerships.

**C.     THE CLAIM**

19.     In response, on February 19, 2014, the RB Plaintiffs filed a First Amended Petition adding Ronald L. Bernell (an individual affiliated with each of the RB Plaintiffs) as a plaintiff, and naming, in pertinent part, FWFT, Knight, and Stieber as defendants, and, for the first time, making allegations against NKTI and FWFT, Knight and Stieber for covered **D&O Wrongful Acts** (the First Amended Petition").

20.     Specifically, in addition to repeating their request for declaratory relief made in the

Original Petition (filed twelve months earlier), in the First Amended Petition, the RB

Plaintiffs alleged for the very first time, in pertinent part:

> Together, Knight, Stieber [as trustees of FWFT], . . . hold or control all the
> property of [FWFT], including a controlling interest in NKTI.
>
>     . . .
>
> It has now become apparent that Stieber and Knight have determined to flout
> the requirements of [FWFT] for their own personal benefit, and have
> systematically prevented [FWFT] from functioning with the intended
> oversight required by the trust documents. In particular, Stieber and Knight
> have formed Defendants Kronick Holdings and the Foundation Company
> without authority, and have, upon information and belief, transferred assets
> of [FWFT] to these entities, also without authority. Stieber and Knight have
> also appointed themselves as officers of NKTI without the required approval
> of a full slate of [FWFT] trustees. As a consequence, [FWFT], NKTI, . . .
> are acting without authorization, the consequence being that, as a matter of
> law, Stieber and Knight must personally answer for all liability arising from
> their *ultra vires* and illegal actions.
>
>     . . .
>
> As a direct and proximate consequence of Stieber and Knight's action, both
> Point Harwin and Braniff CB, Ltd. have suffered damages to a material
> degree by preventing the transfer of material sums to the partnerships. . . .
> Stieber and Knight, as fiduciaries, are required to act in good faith and in the
> best interest of the partnership. Their actions however have now prevented
> the partnership from repaying loans made by the parties, which the
> partnership has a duty to repay. Stieber and Knight have therefore breached
> their fiduciary duties to Braniff CB, Ltd, exposing it to substantial and
> needless liability.
>
>     . . .
>
> . . . Stieber and Knight, on behalf of [FWFT], published statements . . . which
> are defamatory per se, . . . .

21.    The First Amended Petition asserted causes of action against Stieber, Knight and

NKTI for breach of fiduciary duties; against Stieber and Knight for defamation; and against

Stieber, Knight and NKTI for breach and tortious interference.

**D.     CLAIM FOR INSURANCE PROTECTION; DEFENDANT'S RESPONSE**

22.     On March 13, 2014, pursuant to the terms of the 2013/2014 Policy, Plaintiffs timely notified Philadelphia Insurance of the **Claim** made against them and forwarded Philadelphia Insurance a true and correct copy of the First Amended Petition which undeniably alleged **D&O Wrongful Acts** against Stieber and Knight.    Philadelphia Insurance opened a claim and assigned Lamere to adjust the claim.

23.     Although Philadelphia Insurance sent an acknowledgment letter to Plaintiffs on March 18, 2014 that it had received notice of the **Claim**, and on June 25, 2014 indicated that it had received all information necessary to determine coverage, Philadelphia Insurance failed to provide a coverage letter to Plaintiffs until March 18, 2015 (twelve months after being notified of the **Claim**).    In its March 18, 2015 correspondence to Plaintiffs, Philadelphia Insurance informed Plaintiffs, in pertinent part, that it had "concluded that the [2013/2014 Policy] do[es] not provide coverage for the **Claim**.

24.     Defendants failed to make an attempt to settle the **Claim** in a fair manner, although Defendants were aware of their liability to Plaintiffs under the 2013/2014 Policy. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(2)(a).

25.     Defendants failed to affirm or deny coverage of the **Claim** within a reasonable time. Specifically, Plaintiffs did not receive timely indication of acceptance or rejection in writing from Defendants.    Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE § 541.060(a)(4).

26.     Defendant Lamere failed to meet his obligations under the Texas Insurance Code regarding the timely acknowledgment of the **Claim**, beginning an investigation of the Claim and requesting all information reasonably necessary to investigate the **Claim** within the statutorily mandated time of receiving notice of the **Claim**.  Defendant Lamere's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE § 542.055.

27.     Defendant Philadelphia Insurance failed to accept or deny the **Claim** within the statutorily mandated time of receiving all necessary information.  Defendant Philadelphia Insurance's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE § 542.056.

28.     Defendant Philadelphia Insurance failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay.   Specifically, Defendant Philadelphia Insurance has delayed payment of the **Claim** longer than allowed and, to date, Plaintiffs have not yet received full payment for the **Claim**.  Defendant Philadelphia Insurance's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE § 51.058.

29.     From and after the time the **Claim** was presented to Defendant Philadelphia Insurance, the liability of Defendant Philadelphia Insurance to pay the **Claim** in accordance with the terms of the 2013/2014 Policy was reasonably clear.   However, Defendant Philadelphia Insurance has refused to pay Plaintiffs, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny

payment.  Defendant Philadelphia's conduct constitutes a breach of the common law duty of good faith and fair dealing.

30.     As a result of Defendants' wrongful acts and omissions, Plaintiffs were forced to retain the professional services of the undersigned law firm to represent Plaintiffs with respect to these causes of action.

## VI.   CAUSES OF ACTION

### CAUSES OF ACTION AGAINST DEFENDANT PHILADELPHIA INSURANCE

31.     Defendant Philadelphia Insurance is liable to Plaintiffs for intentional breach of contract, as well as intentional violations of the Texas Insurance Code and intentional breach of the common law duty of good faith and fair dealing.

**A.     *BREACH OF CONTRACT***

32.     The 2013/2014 Policy is a valid, enforceable contract.

33.     Philadelphia Insurance and FWFT are parties to the 2013/2014 Policy; NKTI, Knight, and Stieber are intended third-party beneficiaries of the 2013/2014 Policy.

34.     All relevant conditions precedent have been performed or have occurred.

35.     Under the 2013/2014 Policy, Philadelphia Insurance had a contractual duty to pay on behalf of NKTI, FWFT, Knight, and Stieber, **Loss** from the **Claim** made against NKTI, FWFT, Knight and Stieber for alleged **D&O Wrongful Acts.**  Further, Philadelphia had a contractual obligation to "undertake and manage defense of the **Claim**, even if the **Claim** is groundless, false or fraudulent."

36.     Plaintiffs assumed the defense of the **Claim**, as explicitly provided for in the 2013/2014 Policy.  Accordingly, Philadelphia Insurance had a contractual obligation to advance **Defense Costs** prior to final disposition of the Claim.

37.     The allegations contained in the First Amended Petition include breach of fiduciary duty, conspiracy regarding breach of fiduciary duty, and defamation.   Despite these allegations being covered **D&O Wrongful Acts** under the 2013/2014 Policy, Philadelphia Insurance breached the 2013/2014 policy by failing and refusing to pay on behalf of Plaintiffs **Loss** from **Claims** made against Plaintiffs in the First Amended Petition, unreasonably withholding consent to pay **Defense Costs**, and failing and refusing to pay **Defense Costs** Plaintiffs incurred in defense of the **Claim**.

38.     As a natural, probable, and foreseeable consequence of Philadelphia's breach of the 2012/2014 Policy, Plaintiffs suffered monetary loss.

**B.     *NonCompliance with Texas Insurance Code:  Unfair Claim Settlement Practices***

39.     After having received notice of the Plaintiffs' losses clearly covered by the parties' contract of insurance, all as set out in the preceding paragraphs of this petition, Philadelphia Insurance engaged in several unfair settlement practices, as enumerated and defined as unfair or deceptive in Section 541.060(a) of the Texas Insurance Code, including but not limited to the following:

- Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which Philadelphia Insurance's liability had become reasonably clear.

- Failing to promptly provide to Plaintiffs a reasonable explanation of the basis in the policy for Philadelphia Insurance's denial of the claim.

- Failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs; or failing within a reasonable time to submit a reservation of rights to Plaintiffs.

- Refusing to pay the claim without conducting a reasonable investigation with respect to the claim.

40.     Plaintiffs will show that these acts and omissions on Philadelphia Insurance's part were done knowingly, that is with an actual awareness of the falsity, unfairness, or deception of the conduct described. Consequently, Plaintiffs request that the trier of fact award Plaintiffs additional damages of up to three times the sum of actual damages suffered.

**C.     NONCOMPLIANCE WITH TEXAS INSURANCE CODE: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

41.     From and after the time Plaintiffs' claim was presented to Philadelphia Insurance, Philadelphia Insurance's liability to pay the claim in accordance with the terms of the insurance policy attached as Exhibit A was reasonably clear. Despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny payment of Plaintiffs' claim, Philadelphia Insurance refused to accept the claim and pay Plaintiffs as the policy required.

42.     At that time, Philadelphia Insurance knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear. In this regard, Plaintiffs will show that Philadelphia Insurance failed to conduct a reasonable, proper investigation of the

claim and refused to rely on the true facts, resorting instead to producing faulty, incomplete, and biased reasons as subterfuges to avoid paying a valid claim.

43.     Consequently, Philadelphia Insurance breached its duty to deal fairly and in good faith with Plaintiffs. Philadelphia Insurance's breach was a proximate cause of the losses, expenses, and damages suffered by Plaintiffs as more specifically described below.

**D.     NONCOMPLIANCE WITH TEXAS INSURANCE CODE: FAILURE TO COMPLY WITH PROMPT PAYMENT STATUTE**

44.     On March 13, 2014, Plaintiffs provided proper written notice of the claim to Philadelphia Insurance, fully apprising Philadelphia Insurance of all the facts relating to Plaintiffs' claim under the policy of insurance as detailed above. Thereafter, on March 18, 2014, Philadelphia Insurance acknowledged receipt of the claim, took Plaintiffs' statement, and requested other information and/or documents and materials from Plaintiffs, and assigned an adjuster to investigate the claim. 46.       Plaintiffs fully cooperated with Philadelphia Insurance and, by June 5, 2014, Plaintiffs had furnished the defendant all the items, statements, bills, and other papers requested.

45.     Notwithstanding such cooperation, approximately eight months later, on March 18, 2015 (and more than twelve months after Plaintiffs' first notified Philadelphia Insurance of the claim), Plaintiffs received a letter from Philadelphia Insurance rejecting the claim and refusing to pay the benefits afforded by the policy of insurance.

46.     Although more than 60 days elapsed from the time Philadelphia Insurance received all the items requested to process Plaintiffs' claim, the claim was not paid by Philadelphia Insurance.  Thus, Plaintiffs are entitled to recover the additional sum of 18 percent per

annum on Plaintiffs' damages as described in this petition from August 24, 2014 until the day before the judgment for Plaintiffs in this case is signed.

### E.    BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

47.    Philadelphia Insurance Company's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

48.    Philadelphia Insurance Company's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' Claim, although, at that time Philadelphia Insurance knew or should have known by exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## CAUSES OF ACTION AGAINST DEFENDANT LAMERE:  TEXAS INSURANCE CODE VIOLATIONS

49.    Defendant Lamere's conduct constitute multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE § 541.060(a).  All violations under this article are made actionable by Texas Insurance Code § 541.151.

50.    Lamere is individually liable for his unfair and deceptive acts, irrespective of the fact that he was acting on behalf of Philadelphia Insurance because, individually, he meets the definition of a "person" as defined by Texas Insurance Code § 541.002(2).  The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster or life health insurance counselor."  TEX. INS. CODE § 541.002(2) (emphasis supplied); *see also Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998)

(holding an insurance company employee to be a "person" for the purpose of brining a cause of action against them under the Texas Insurance Code and subjecting them to individual liability).

51.     On March 14, 2014, Philadelphia Insurance sent Plaintiffs an email acknowledging receipt of the **Claim**, advising that Lamere had been assigned to investigate the **Claim** on behalf of Philadelphia Insurance, advising that Lamere would be contacting Plaintiffs to discuss the **Claim** "in more detail," and providing contact information for Lamere at Philadelphia Insurance's Dallas, Texas office.[2]  There is no evidence, however, that after Plaintiffs reported the **Claim**, Lamere made any requests for items, statements, forms, documents, and/or any other information from Plaintiffs.  Rather, the only evidence is that for approximately one year, Lamere wholly failed to respond to Plaintiffs' many requests for updates regarding investigation and coverage of the **Claim**, failed to effectuate a prompt, fair and equitable settlement of the **Claim**, and failed within a reasonable time to affirm or deny coverage of the **Claim**, or submit a reservation of rights letter to Plaintiffs.

52.     Specifically, on June 25, 2014, having not heard from Lamere "in a while" and questioning why Lamere had not requested information concerning the **Claim**, Plaintiff Knight called Lamere and left a message; Lamere did not return the call.

53.     Also on June 25, 2014, Philadelphia Insurance indicated it had "everything they need," were working on the coverage opinion, and "it shouldn't be much longer."

---

[2] On March 18, 2014, Philadelphia Insurance sent Plaintiffs a formal loss acknowledgment letter acknowledging receipt of the Claim and again advising that Lamere had been assigned to investigate Plaintiffs' claim on behalf of Philadelphia Insurance, and providing Lamere's email address, and telephone and fax numbers.

PLAINTIFFS' ORIGINAL PETITION (WITH REQUESTS FOR DISCLOSURE)—PAGE 16

54.     On June 27, 2014, still having not heard from Lamere, Plaintiff Knight emailed

Philadelphia Insurance Claims Supervisor Cheryl Delaney ("Delaney") asking for an

update reporting "neither I, nor any of the attorneys representing the various entities, have

spoken with anyone representing Philadelphia Insurance regarding this claim recently,"

and expressly asking for Lamere to give her a call to discuss the **Claim**.  There is no

evidence that Lamere, or Delaney, responded to Knight's request.

55.     On June 30, 2014, and July 2, 2014, Knight followed up again asking for a telephone

call from Lamere specifically regarding D&O coverage.  On July 2, 2014, the following

email exchange took place between Knight and Delaney:

> Knight:   Please call me regarding this claim.  I need to know that
> Philadelphia is going to represent Gregg Stieber and me as officers
> and directors of FWFT] and [NKTI].

> Delaney:  Did Rick call you about this?  If not, I will follow up with him and
> get back with you this morning.

> Knight:   No.  I have not heard from him.  Please ask him to call me.

> Delaney:  I spoke with [Lamere] and he will be calling you today.

56.     Lamere never responded.

57.     On July 6, 2014, Knight emailed Delaney:  "I never heard from [Lamere]. Will you

please follow up with him on Monday"; Delaney: "Yes.  I just did."

58.     Lamere never responded.

59.     Finally, on July 11, 2014, Plaintiffs' attorney reported to Knight:

> I spoke with Rick.  He said he is still waiting on the coverage letter but that
> he expects it sometime next week.  I told him that I wanted to make sure that
> coverage was being looked at for not only you and [Stieber] individually but
> also [FWFT].  [Lamere] said he didn't know but that he would check.

60.     Accordingly, four months *after* Plaintiffs first gave Philadelphia Insurance notice of the **Claim** against the Plaintiffs, including FWFT, almost one month *after* Philadelphia Insurance indicated it had everything necessary to determine coverage, Lamere—the adjuster assigned to handle and investigate the **Claim** on behalf of Philadelphia Insurance—could not respond as to whether or not he was investigating coverage as to FWFT.

61.     Over the next three months, Knight and her attorney continued to attempt to speak with Lamere concerning his investigation of the **Claim** and determination of coverage, but neither one ever received any response.  Philadelphia Insurance continued to fail to provide a coverage letter, defend Plaintiffs for the covered **Claim**, or otherwise respond to the **Claim**.

62.     Finally, on March 18, 2015, more than one year after Plaintiffs gave Philadelphia Insurance notice of the **Claim**, one year after Philadelphia Insurance assigned the claim to Lamere for handling, and almost nine months after Philadelphia Insurance reportedly had received all items needed to determine coverage, Plaintiffs' received notice that Philadelphia Insurance was denying coverage.  Notably, there is nothing in the coverage opinion indicating that this decision was based on anything other than the pleadings.

63.     The allegations contained in the First Amended petition include breach of fiduciary duty, conspiracy regarding breach of fiduciary duty, and defamation.  Despite these allegations being covered **D&O Wrongful Acts** under the 2013/2014 Policy, Philadelphia Insurance failed to defend Plaintiffs, and failed to pay for reasonable and necessary legal

fees and expenses incurred in the defense of the allegations.   For approximately twelve months between the time Lamere was assigned to investigation the **Claim** and the time coverage was denied, Lamere failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the **Claim** when Philadelphia Insurance's liability had become reasonably clear, and, correspondingly, failed within a reasonable time to affirm or deny coverage.

64.    Lamere's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the 2013/2014 Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE § 541.060(a)(2)(A).

65.    Lamere's unfair settlement practice as described above, of failing within a reasonable time to affirm or deny coverage of the **Claim** to Plaintiffs, or to submit a reservation of rights letter to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE § 541.060(a)(4).

## VII.   CONDITIONS PRECEDENT

66.    All conditions precedent have been performed or have occurred.

## VIII.   KNOWLEDGE

67.    Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiffs' damages described herein.

PLAINTIFFS' ORIGINAL PETITION (WITH REQUESTS FOR DISCLOSURE)—PAGE 19

## IX.   DAMAGES

68.    Plaintiffs will show that all of the aforementioned acts, taken together or singularly, constitute the producing and the proximate cause of harm to Plaintiffs.

69.    For breach of contract, Plaintiffs are entitled to regain the benefit of Plaintiffs' bargain, which is the amount of its Claim, together with attorney's fees.

70.    For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, plus court costs and reasonable and necessary attorney's fees.  For knowing conduct of the acts complained of, Plaintiffs ask for three times Plaintiffs' actual damages. TEX. INS. CODE § 541.152.

71.    For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to actual damages, statutory damages of 18% per year on the amount of the claim accruing from the date Defendants violated the statute through the date of judgment, defense costs, court costs, and postjudgment interest.  TEX. INS. CODE §542.060.

72.    For breach of common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional distress.

## X.    ATTORNEY'S FEES

73.    For the prosecution and collection of this Claim, Plaintiffs have been compelled to engage the services of the law firm whose name is subscribed to this pleading.  Therefore,

Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court.

## XI.   REQUESTS FOR DISCLOSURE

74.     Pursuant to Rule 194, Plaintiffs request Philadelphia Insurance disclose, within fifty (50) days of service of this request, the information or material described in Rule 194.2(a)-(l).

WHEREFORE, Plaintiffs Sandra Knight and Gregg Stieber, Individually and as Trustees of the Fort Worth Foundation Trust, and Norman Kronick-Texas, Inc. request that Defendants Philadelphia Indemnity Insurance Company and Richard C. Lamere be cited to appear and answer, and that on final trial of this cause, Plaintiffs recover judgment against the Defendants for the following:

1.   Actual damages sustained by the Plaintiffs, as set out in this petition, in an amount within the jurisdictional limits of the Court;

2.   Exemplary damages as provided by law or damages up to three times the actual damages, as found by the trier of fact;

3.   Attorney's fees;

4.   Prejudgment and postjudgment interest as provided by law;

5.   Costs of suit; and

6.   Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s/ Thomas M. Michel
Thomas M. Michel
State Bar No. 14009480
thomasm@lawgjm.com
James V. Jay, IV
State Bar No. 10595300
jimj@lawgjm.com
Lauren M. Lockett
State Bar No. 24013886
laurenl@lawgjm.com
GRIFFITH, JAY & MICHEL, LLP
2200 Forest Park Blvd.
Fort Worth, Texas 76110
(817) 926-2500 (Telephone)
(817) 926-2505 (Facsimile)
**ATTORNEYS FOR PLAINTIFFS**